UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 JUN 27  AM 11: 44

CLERK

BY _____ *UW*
DEPUTY CLERK

UNITED STATES OF AMERICA, )
)
v. )
) Case No. 2:22-cr-00067
DEVEN MOFFITT, )
)
Defendant. )

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR
SUPPRESSION OF EVIDENCE AND REQUEST FOR A *FRANKS* HEARING**
(Doc. 25)

Pending before the court is Defendant Deven Moffitt's motion to suppress
evidence obtained from searches of a fanny pack discovered on his person at the time of
his arrest and a shoulder bag found in a trash can near the site of his arrest. Defendant
argues that the U.S. currency discovered inside his fanny pack must be suppressed
because law enforcement's warrantless search of it was not incident to arrest. He asserts
that evidence found inside the shoulder bag must also be suppressed because law
enforcement relied on the allegedly unlawful search of the fanny pack in order to obtain a
search warrant for both bags. He seeks an evidentiary hearing under *Franks v. Delaware*,
438 U.S. 154 (1978)[1] to address the false statements he contends were made in the search
warrant affidavit. The government opposes the motion.

The United States is represented by Assistant United States Attorney Michael P.
Drescher. Defendant is represented by Robert L. Sussman, Esq.

I.      **Procedural History.**

Defendant is charged in a three-count Indictment (the "Indictment") with:

---

[1] Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant may overcome a warrant's
"presumption of validity" and be entitled to an evidentiary hearing if (1) the warrant affidavit
contains a false statement; (2) which was included knowingly and intentionally or with reckless
disregard for the truth; and (3) the false statement was necessary to the probable cause finding.
*Id.* at 171, 155-56.

knowingly and intentionally possessing with intent to distribute fentanyl and cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count I); knowingly possessing firearms, specifically a .22 caliber High Standard Mfg. Corp. revolver and a 9mm Hi-Point pistol, in furtherance of the drug trafficking crime alleged in Count I, in violation of 18 U.S.C. § 924(c)(1)(A) (Count II); and knowingly possessing firearms, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year and knowing he had been convicted of such a crime, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Defendant moved to suppress evidence on February 8, 2023 (Doc. 25). On February 22, 2023, the government opposed his motion (Doc. 27). The court held an evidentiary hearing on April 27, 2023. The parties filed post-hearing briefs on May 16, 2023. (Docs. 32, 33.) Defendant filed additional supplemental briefing on May 29, 2023 (Doc. 35), and the government responded on May 31, 2023 (Doc. 36). On June 13, 2023, Defendant filed a third supplement to his motion to suppress (Doc. 37), at which point the court took the pending motion under advisement.

## II.     Findings of Fact.

Based upon the preponderance of evidence, the court makes the following findings of fact.

On or about June 1, 2022, the Vermont State Police ("VSP") planned to arrest Defendant in connection with a homicide investigation. At approximately 11:20 a.m., VSP's Major Crime Tactical Unit approached a location where it believed Defendant would be found. Defendant exited a vehicle and was spotted in front of the Brookside apartment complex located on South Street in Bennington, Vermont. VSP troopers armed with, among other things, paintball guns equipped with a bright green ink, approached Defendant. As they did so, Defendant was ordered to surrender, however, he fled the scene instead. As he was fleeing, law enforcement officers shot at him with paintball rounds.

The VSP troopers lost sight of Defendant until other members of their team spotted him near a residence on Jefferson Avenue. Those team members took Defendant

2

into custody. Body camera footage does not exist of the "takedown" itself. A still shot from video footage depicts Defendant lying face down on the ground on top of a black fanny pack attached to his body by a large strap across his chest. *See* Government's Exhibit 5. Defendant's clothing was marked with green paint.

Law enforcement conducted a search of Defendant's person incident to arrest and found two unknown pills and a lighter among other items. A law enforcement officer briefly opened the black fanny pack and observed a large amount of U.S. currency therein. The other items retrieved from Defendant's body were placed in the fanny pack. At the time, Defendant was subject to law enforcement's control as he was handcuffed, he was in the process of being ankle cuffed, and a VSP team member was kneeling on him. *See* Government's Exhibit 5; *see also* Doc. 30 at 23:11-16 ("The trooper that's partially in uniform and partially wearing the camouflaged vest is securing Mr. Moffitt's ankles in ankle cuffs. Troopers are searching Mr. Moffitt, and basically in the center of the video, you can see Trooper Conte kneel down, and he appears to have just opened that black fanny pack that I discussed previously.").

After Defendant's arrest, VSP team members talked to neighbors who had witnessed Defendant's flight and who advised that Defendant had discarded an object in a trash can at a nearby residence. Law enforcement opened the trash can and retrieved a black shoulder bag spotted with green paint.

In his post-arrest statements, Defendant disclaimed knowledge of the shoulder bag but now claims ownership of it for purposes of his suppression motion.[2] He advised law enforcement officers to be careful in doing their job in response to safety-related questions.

After seizing the fanny pack and shoulder bag, Detective Kinney applied for a

---

[2] *See Simmons v. United States*, 390 U.S. 377, 390 (1968) (holding that "testimony given by a defendant to meet [standing] requirements should not be admissible against him at trial on the question of guilt or innocence"); *see also* Fed. R. Evid. 104(d) ("By testifying on a preliminary question, a defendant in a criminal case does not become subject to cross-examination on other issues in the case.").

search warrant for both items. In his affidavit in support of probable cause, he incorrectly stated that the black fanny pack was opened as a receptacle for the items found on Defendant's person and a large amount of currency was observed therein when in fact law enforcement opened the fanny pack first, saw the currency, and then placed the items seized from Defendant in the fanny pack.[3]

In addition, Defendant contends Detective Kinney's search warrant affidavit incorrectly characterizes Defendant's girlfriend's statements regarding the contents of the bags.[4] Excluding the challenged evidence, Detective Kinney's affidavit sets forth the following facts:

### Deven Moffitt

1. The Vermont State Police—Major Crime Unit established probable cause to arrest Deven Moffitt . . . for the murder of Jessica Hildenbrant that occurred on or about July $14^{th}/15^{th}$ 2019.

2. Through the course of the Hildenbrant investigation Moffitt became the target of a drug investigation by the Vermont Drug Task force (VDTF) in Bennington County, Vermont. Through two credible VDTF sources Moffitt was known to be selling cocaine base and heroin/fentanyl. The VDTF conducted a control[led] buy utilizing a confidential informant where the purchase of 100 bags of fentanyl was made from Moffitt in early May of 2022.

### June 1st, 2022, Arrest of Deven Moffitt

3. On June 1st, 2022, the Vermont State Police–Major Crime Unit facilitated the arrest of Deven Moffitt in the Town of Bennington, Vermont. At approximately 11:20 hours, [t]he Vermont State Police located and made contact with Moffitt at the Brookside Apartments, located at 323 South Street in Bennington. Moffitt did not comply with the verbal orders made to him by the Vermont State Police–Tactical Services Unit (TSU) and fled the apartment parking lot on foot. As Moffitt turn[ed] and ran, TSU members deployed two 40mm less than lethal (green) marking/impact rounds that struck Moffitt in his lower

---

[3] Defendant contends that if a *Franks* hearing were held, he may be able to establish that the fanny pack was locked.

[4] The parties cite different portions of the interview for their competing interpretations of it. As the interview transcript and recording are not before the court, the court does not consider this evidence in its analysis.

extremities. Moffitt was seen by TSU members running with a black bag in his hands.

4. After a short foot pursuit and a brief loss of visual contact, Moffitt was apprehended at approximately 11:25 hours, behind the Brookside apartments on Jefferson Avenue. At the time of the arrest, Moffitt was wearing a small black fanny pack across his chest. During the search incident to arrest, a small see-through capsule, containing two unknown pills, was located on the ground by Moffitt. Moffitt's personal effects to include a lighter and the small see-through capsule were placed in the black fanny pack that he was wearing across his chest[.]

5. After Moffitt was in custody, I made contact with nearby neighbors who observed Moffitt running and the subsequent arrest. While speaking with neighbors who were outside their residences, one subject, who was identified as [first and last name and DOB provided], stated she saw a male (later identified as Moffitt) running in between residences toward Jefferson Avenue. [Neighbor 1] stated as Moffitt was running, he tripped over a cement staircase causing him to fall directly in front of her. Moffitt then stood back up and ran around the corner of the next door neighbor's residence.

6. When Moffitt was out of sight from [Neighbor 1], [Neighbor 1] stated she heard the recognizable "thunk" of the lid of a nearby trashcan. [Neighbor 1] stated she immediately knew Moffitt disposed of something inside the trashcan. [Neighbor 1] then instructed me to look inside the nearby trashcan at the neighbor's residence.

7. I also spoke to [first and last name and DOB provided] who lives across the street from where Moffitt was arrested. [Neighbor 2] stated he observed a male (later identified to be Moffitt) running away from law enforcement toward Jefferson Avenue. As Moffitt ran, [Neighbor 2] witnessed Moffitt put a black bag inside a nearby trashcan as he ran. [Neighbor 2] attempted to notify nearby law enforcement by yelling to them, however Moffitt was arrested within seconds.

8. After speaking to nearby witnesses, I checked the TAM trashcans Moffitt was believed to have placed an unknown item into. A black shoulder bag was located inside one of the trashcans. This shoulder bag was positioned on top of already placed trash inside the trashcan and was photographed in place prior to removing it. Upon removing the shoulder bag, green powder transfer was observed on the shoulder bag. This green powder was similar in color to the 40mm less than lethal green marking/impact rounds members of the Tactical Services Unit deployed on to Moffitt as he was running away.

9. After the arrest, Moffitt was interviewed by Det. Sgt. Sam Truex and Det. Sgt. Jesse Robson. During the interview with Moffitt, Moffitt initially denied ownership of the black bag which was located inside the trashcan. After being presented with information that law enforcement was seeking a search warrant for the bag in the trashcan, and after asking Moffitt safety related questions about the contents of the bag, Moffitt advised police should be careful when doing their job.

(Doc. 25-1 at 3-4.)

A Vermont Superior Court judge authorized a warrant to search for evidence of possession and control of regulated drugs in violation of 18 V.S.A. §§ 4231 and 4233 for any and all electronic devices including cell phones, iPads, portable electronic devices and/or data storage devices; firearms, ammunition, and magazines; any and all drugs, specifically heroin, fentanyl, and cocaine (base/powder); any and all U.S. currency; and any and all drug paraphernalia.

VSP Detective Sergeant Jeffrey Stephenson executed the search warrant. He credibly testified that he believed the search warrant was valid and relied on it in searching the fanny pack and the shoulder bag. *See* Doc. 30 at 8:25-9:3 ("Did you—at the time you executed the warrant, did you have any question as to the validity of the warrant that is part of Exhibit 1?" "No, I did not.").

## III.      Conclusions of Law and Analysis.

### A.      Whether Defendant has Standing to Challenge the Search of the Shoulder Bag.

"[R]ights assured by the Fourth Amendment are personal rights, and [ ] they may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure." *Simmons v. United States*, 390 U.S. 377, 389 (1968) (citing *Jones v. United States*, 362 U.S. 257, 260-61 (1960)). "[A] warrantless search or seizure of abandoned property does not violate the [F]ourth [A]mendment" because "one forfeits any reasonable expectation of privacy upon abandoning one's property[.]" *United States v. Levasseur*, 816 F.2d 37, 44 (2d Cir. 1987). "Abandonment is a question of fact, to be decided in objective terms on the basis of all the relevant facts and circumstances[.]" *Id.* In analyzing whether Defendant abandoned the shoulder bag, a

court "must focus on the intent of the person who is purported to have abandoned the property." *United States v. Lee*, 916 F.2d 814, 818 (2d Cir. 1990).

After Defendant was in custody near a residence on Jefferson Avenue, neighbors advised law enforcement that Defendant had disposed of an item inside a neighbor's trash can. Detective Kinney checked nearby trash cans, discovered the black shoulder bag in question, and observed that "green powder transfer was observed on the shoulder bag" similar to the color used in the non-lethal rounds that were deployed as Defendant fled law enforcement. (Doc. 25-1 at 4, ¶ 8.) Although it is possible that Defendant may have intended to retrieve the shoulder bag at a later time, he provides no evidence of that intent. When presented with an opportunity to claim ownership of the shoulder bag (albeit in a self-incriminating manner), Defendant claimed to have no knowledge of it. *See* Government's Exhibit 11 at 2 (in post-arrest interview, Defendant stated he "only had one bag and that was on me when they arrested me").

A defendant generally does not have a reasonable expectation of privacy in items that have been abandoned. *See United States v. Caputo*, 808 F.2d 963, 967 (2d Cir. 1987) ("[A]n individual ordinarily retains no expectation of privacy in his own garbage when it has been deposited in the street for collection.") (citing *United States v. Terry*, 702 F.2d 299, 309 (2d Cir. 1983)); *see also United States v. Belk*, 174 F. Supp. 2d 138, 141 (S.D.N.Y. 2001) (holding that defendant abandoned any expectation of privacy in a firearm that he threw "toward some trash cans" as he fled officers because he had discarded the weapon). Here, Defendant placed the shoulder bag in a stranger's trash can, not knowing whether or when the trash might be picked up and not safeguarding it in any manner. Under the Fourth Amendment, he cannot now claim he retained a reasonable expectation of privacy in its contents. *See Caputo*, 808 F.2d at 967 (holding that defendants did not maintain an expectation of privacy in an "unmarked plastic bag" which they disposed of "in a receptacle which was neither their can nor on their property" because "[t]o all outward appearances, they had thrown the bag away").

Because Defendant lacks standing to challenge law enforcement's search of the shoulder bag, his motion to suppress it as evidence must be DENIED. The court

nonetheless analyzes whether there was probable cause for the search of the shoulder bag to facilitate appellate review.

> **B.    Whether the Search of Defendant's Fanny Pack was Pursuant to a Lawful Search Incident to Arrest.**

Defendant asserts that law enforcement's search of his fanny pack was not incident to his arrest because the fanny pack was not on his person and he was handcuffed when it was searched. He argues that Detective Kinney's affidavit shows that officers used the fanny pack only "as a depository for the items [ ] they *did* consider to be [ ] fruits of the search incident to arrest[,]" thus distinguishing the contents of the fanny pack from those items. (Doc. 25 at 3) (emphasis supplied.) The government counters that law enforcement's observation of currency inside the fanny pack was lawfully incident to arrest, although it concedes that Detective Kinney's affidavit "was incorrect insofar as it suggested that the currency was first observed when Moffitt's pocket contents were placed in the fanny pack." (Doc. 33 at 4.)

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness[.]'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant[.]" *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995). A warrant "ensures that the inferences to support a search are 'drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" *Riley v. California*, 573 U.S. 373, 382 (2014) (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)).

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnotes omitted). Among these exceptions is a search incident to a lawful arrest. *See Arizona v. Gant*, 556 U.S. 332, 338 (2009). "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Id.*

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and . . . in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.

*United States v. Robinson*, 414 U.S. 218, 235 (1973).

A search incident to arrest may take place before or after an arrest. *See United States v. Jenkins*, 496 F.2d 57, 73 (2d Cir. 1974) ("The mere fact that the trooper reversed the procedure, conducting the search before the arrest, did not render it illegal as long as probable cause to arrest existed at the time of the search."). However, a search is "incident to arrest" only if it is "substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." *Shipley v. California*, 395 U.S. 818, 819 (1969) (quoting *Stoner v. California*, 376 U.S. 483, 486 (1964) (internal quotation marks omitted)). For this reason, "a police officer who makes a lawful arrest may conduct a warrantless search of [only] the arrestee's person and the area 'within his immediate control.'" *Davis v. United States*, 564 U.S. 229, 232 (2011) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)).

Defendant does not dispute that he was lawfully arrested or that law enforcement's brief search of his fanny pack was contemporaneous with his arrest. The only issue is whether the fanny pack was an extension of Defendant's person or within his immediate control at the time it was briefly opened.

Prior to his arrest, Defendant was wearing the fanny pack across his chest and was lying on top of it before it was removed from his person. "[T]he Supreme Court has 'expressly recognized' that 'suspects may injure police officers and others by virtue of their *access* to weapons, even though they may not themselves be armed.'" *United States*

9

*v. Fiseku*, 915 F.3d 863, 871 (2d Cir. 2018) (quoting *Michigan v. Long*, 463 U.S. 1032, 1048 (1983)). At the time of his arrest, the fanny pack was arguably an extension of Defendant's person because it "can be characterized as an element of the [arrestee's] clothing" which may be searched without a warrant. *See United States v. Monclavo-Cruz*, 662 F.2d 1285, 1290 (9th Cir. 1981).[5] The court need not decide this question because Defendant could not have gained access to his fanny pack when law enforcement searched it.

When the fanny pack was briefly opened and visually searched, Defendant was handcuffed, in the process of being ankle cuffed, and was surrounded by law enforcement officers, one of whom was kneeling on him and another of whom retained sole and exclusive control of the fanny pack. "If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Gant*, 556 U.S. at 339.[6]

Because the government has not established that law enforcement's brief inspection of the fanny pack was a search incident to arrest, the currency contained

---

[5] *Compare United States v. Armstrong*, 16 F.3d 289, 294 (8th Cir. 1994) (ruling search of the defendant's wallet was properly incident to a valid arrest), *with United States v. Knapp*, 917 F.3d 1161, 1166-67 (10th Cir. 2019) (holding "a carried purse does not qualify as 'of the person'" for the purposes of a search incident to arrest and "classifying such containers as potentially part of an arrestee's person would necessitate unworkable determinations about what the arrestee was holding at the exact time of [his or] her arrest[,]" and would "erode the distinction between the arrestee's person and the area within [his or] her immediate control.") (emphasis omitted).

[6] *See also United States v. Morillo*, 2009 WL 3254429, at *13 (E.D.N.Y. Aug. 12, 2009) (reasoning that handcuffed defendant "could not reasonably have gained access to [his] backpack" when he was "secured by two much larger officers[,] . . . had a broken collarbone and had no mobility in his right arm, and" when "the backpack was out of his reach and had been secured by the officers"); *United States v. Scott*, 2009 WL 4975269, at *7 (S.D.N.Y. June 8, 2009) (concluding that once an item had been taken from defendant and reduced to law enforcement's exclusive control "the justifications for the search incident to arrest evaporated: no longer could [defendant] access the bag to obtain a weapon or destroy evidence"); *United States v. Giles*, 496 F. Supp. 3d 21, 27 (D.D.C. 2020) (describing it as "'inconceivable that [the defendant] could have gained access to' [his] fanny pack" when law enforcement "opened the fanny pack in [a] field across the street from where [the defendant] sat in handcuffs . . . surrounded by several police officers and paramedics").

therein cannot be used to provide probable cause for the search warrant.

## C.   Whether Detective Kinney's Affidavit Established Probable Cause Without Consideration of the Excluded Evidence.

"While '[t]he mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant or the evidence seized pursuant to the warrant,' the court 'should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant.'" *United States v. Awadallah*, 349 F.3d 42, 68 (2d Cir. 2003) (internal citations omitted) (quoting *United States v. Trzaska*, 111 F.3d 1019, 1026 (2d Cir. 1997) (alterations in original)). In so ruling, the Second Circuit pointed out that "[o]ther circuits have held squarely that the presence of illegal evidence in affidavits presented for a search warrant does not prevent a finding of probable cause sustainable on other grounds." *United States v. Marchand*, 564 F.2d 983, 994 (2d Cir. 1977) (collecting cases). "If the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is admitted." *Id.* at 993.

In this case, Defendant contends that he is entitled to a *Franks* hearing to challenge whether law enforcement intentionally or recklessly included false information in Detective Kinney's search warrant affidavit. A *Franks* hearing is not required, however, if probable cause existed even if the challenged evidence is omitted. The court thus analyzes probable cause without evidence of the currency in the fanny pack and without Defendant's girlfriend's statements.

The court's probable cause inquiry "turns on an 'assessment of probabilities' and inferences, not on proof of specific criminal conduct beyond a reasonable doubt or even by a preponderance of the evidence." *United States v. Martin*, 426 F.3d 68, 76 (2d Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). It is "demonstrated where the totality of circumstances indicates a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Walczyk v. Rio*, 496 F.3d 139, 156 (2d

11

Cir. 2007)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232.

Law enforcement's evidence in support of its request to search Defendant's bags included the following:

- VSP's controlled buy of fentanyl from Defendant in early May of 2022 following information that Moffitt had been selling fentanyl and cocaine from two sources VSP deemed credible.
- Defendant's flight from law enforcement prior to his arrest.
- Neighbors' observations of Defendant discarding an item inside a trash can as he fled on foot.
- Detective Kinney's discovery of a black shoulder bag inside a trash can with green powder markings similar to the non-lethal rounds fired at Defendant.
- Unknown pills found on Defendant's person.
- Defendant's statement that law enforcement should be careful in doing their job in response to safety-related questions.

Defendant's flight from law enforcement provided evidence of consciousness of guilt. *See United States v. Babilonia*, 854 F.3d 163, 179 (2d Cir. 2017) ("We have long recognized flight as an appropriate factor supporting a finding of probable cause[.]"); *United States v. Barret*, 824 F. Supp. 2d 419, 449 (E.D.N.Y. 2011) (concluding that "circumstances leading to [the defendant's] arrest[,] including his attempt to flee[,]" provided "ample support for" magistrate's determination that there was probable cause to issue a search warrant to search cell phone); *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.").

A recent controlled purchase of illegal drugs from a defendant may not only

support a probable cause finding,[7] it may corroborate drug dealing information provided
by police informants. Accordingly, although the search warrant affidavit did not explain
the basis for finding two informants' reports of Defendant's drug dealing credible,[8] a
controlled buy is "powerful corroborative evidence for purposes of determining probable
cause." *United States v. Wagner*, 989 F.2d 69, 73 (2d Cir. 1993); *see also id.* at 72-73
("Information may be sufficiently reliable to support a probable cause finding if the
person providing the information has a track record of providing reliable information, or
if it is corroborated in material respects by independent evidence."); *United States v.
Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004) (holding "[a] tip from an anonymous or
confidential informant that narcotics are being distributed at a particular location may be
corroborated" by a controlled buy).

Disinterested neighbors' reports that Defendant had discarded an item while
fleeing from police gave rise to a reasonable inference that the discarded item was
incriminating because Defendant sought to distance himself from it and ensure he was
not carrying it if arrested.[9] In addition, the neighbors' reports contributed to probable

---

[7] *See United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) (holding law enforcement had
probable cause to support search warrant for defendant's residence when "informant had
completed numerous other controlled buys in the past and provided, on those occasions, accurate
and reliable information"); *Reeder v. Vine*, 2023 WL 2044126, at *6 (W.D.N.Y. Feb. 16, 2023)
("[T]he totality of the circumstances, including [law enforcement officer's] personal
observations of the controlled buys, provided probable cause to arrest"); *United States v.
Williams*, 339 F. Supp. 3d 129, 133-34 (W.D.N.Y. 2018) (concluding there was probable cause
to issue search warrant for residence when law enforcement knew that a confidential informant
had purchased drugs inside the home).

[8] The absence of this information is not dispositive. *See United States v. Hodge*, 714 F.3d 380,
385 (8th Cir. 2013) (observing that search warrant affidavit need not provide basis for
informant's reliability and noting that "the legal consequences of lying to law enforcement
officials tend to ensure reliability"); *United States v. Tiem Trinh*, 665 F.3d 1, 10-13 (1st Cir.
2011) (ruling that whether a search warrant affidavit establishes the probable veracity and basis
of knowledge of a source of information is relevant, however, courts will often credit law
enforcement's own assessment of credibility and reliability).

[9] *See, e.g.*, *United States v. LaFlamme*, 2013 WL 5321719, at * 8-9 (W.D. Mo. Sept. 23, 2023)
(concluding that when defendant hid property under a wooden ramp, he sought to "conceal the
incriminating evidence and distance himself from it if it was discovered"); *United States v.
Berroa*, 2021 WL 149254, at *5 (D. Mass. Jan. 15, 2021) (concluding that defendant's lack of

cause because "information provided by 'an identified bystander with no apparent motive to falsify' has 'a peculiar likelihood of accuracy,' and . . . 'an identified citizen informant is presumed to be reliable.'" *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal citation omitted) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 163 (2d Cir. 2002)); *see also Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists . . . unless the circumstances raise doubt as to the person's veracity[.]"). "[P]robable cause does not require officers to rule out . . . innocent explanation[s] for suspicious facts." *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018).

Finally, when Defendant cautioned law enforcement officers to be careful doing their jobs in response to safety-related questions, a reasonable inference is that one or both of the bags contained a loaded firearm or other dangerous weapon and that Defendant had knowledge of each bag's contents.

Based on the totality of the circumstances, the search warrant affidavit establishes that a reasonable prudent person would believe that evidence of a crime would be found in bags Defendant was either wearing or carrying as he fled from the police. Probable cause to search Defendant's fanny pack and shoulder bag for evidence of drug trafficking and firearm crimes thus existed even without the challenged evidence. For this reason, the court need not grant Defendant's request to "re-open the evidence and examine the *Franks* issues at a hearing geared specifically to that question[.]" (Doc. 32 at 3 n.1).

## D.   Whether Law Enforcement Relied in Good Faith on the Search Warrant.

As an alternative ground for denying Defendant's motion to suppress, the government argues that VSP relied in good faith on a facially valid warrant to search the

---

attention to his phone "could mean that it contained incriminating evidence that he wanted to distance himself from"); *United States v. Patterson*, 25 F.4th 123, 151 (2d Cir. 2022) (noting that "[u]nusual, evasive, or furtive behavior, especially in the presence of law enforcement, is often a critical factor in the reasonable suspicion analysis" and "applies equally to the probable cause analysis") (internal quotation marks omitted) (quoting *United States v. Weaver*, 9 F.4th 129, 147 (2d Cir. 2021)).

fanny pack and shoulder bag. The purpose of the exclusionary rule "is to deter future Fourth Amendment violations." *Davis*, 564 U.S. at 236-37. "[W]hen the police act with an objectively reasonable good-faith belief that their conduct is lawful, . . . or when their conduct involves only simple, isolated negligence, . . . the deterrence rationale loses much of its force, and exclusion cannot pay its way[.]" *Id.* at 238. (internal citations and quotation marks omitted). Accordingly, "evidence obtained by officers 'in objectively reasonable reliance' on a warrant subsequently invalidated by a reviewing court is not generally subject to exclusion." *United States v. Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015) (quoting *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008)). Stated differently, "[w]hen an officer genuinely believes that he has obtained a valid warrant from a magistrate and executes that warrant in good faith, there is no conscious violation of the Fourth Amendment, 'and thus nothing to deter.'" *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 920-21 (1984)).

VSP Detective Sergeant Stephenson credibly testified that he relied on the search warrant's validity in executing the searches of Defendant's bags. Because his reliance was objectively reasonable in the facts and circumstances of this case, even if the search warrant was not supported by probable cause, which it was, the good faith exception would apply.

## CONCLUSION

For the foregoing reasons, the court DENIES Defendant's motion to suppress evidence and for a *Franks* hearing. (Doc. 25.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this __27th__ day of June, 2023.

Christina Reiss, District Judge
United States District Court